UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA ESTABROOK, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * Civil Action No. 16-cv-11772-ADB |
| UNITED STATES OF AMERICA | * |
| [GENERAL SERVICES | * |
| ADMINISTRATION] | * |
| | * |
| Defendant. | * |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

BURROUGHS, D.J.

On September 3, 2014, Plaintiff Patricia Estabrook fell and suffered injuries while visiting the Tip O'Neill Building, a federal building owned and operated by the General Services Administration ("GSA"). Thereafter, on August 31, 2016, Estabrook filed the instant lawsuit in which she asserts a negligence claim against the GSA under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, based on the design of certain stairs in the atrium of the Tip O'Neill Building and the GSA's failure to warn Plaintiff of the associated danger. [ECF No. 1] ("Compl."). The government moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and 12(b)(6) for failure to state a claim upon which relief can be granted. [ECF No. 14]. For the reasons set forth below, the motion is GRANTED.

### I. BACKGROUND

The following facts are drawn from the Complaint, its attachments, and a picture attached to the government's motion that Plaintiff does not contest the authenticity of. [ECF Nos. 1, 1-4,

15-1].¹  On a motion to dismiss pursuant to Rule 12(b)(1), the Court "may consider whatever evidence has been submitted." Carroll v. United States, 661 F.3d 87, 94 (1st Cir. 2011) (citation omitted).  Plaintiff attached several photographs to her opposition to the motion to dismiss that were apparently intended to show that the stairs at issue were hard to see, but the Court will not consider these photographs as it cannot assess the accuracy of the photographs or whether they have been enhanced in any way and because the photographs appear to be offered primarily to support a theory of liability based on the appearance of the stairs that is not asserted in the Complaint.²  The Court, as it must, presumes the accuracy of Plaintiff's well-plead allegations and draws all reasonable inferences in her favor.

On September 3, 2014, Plaintiff visited the Tip O'Neill Building, which is owned, operated, managed, and maintained by the GSA, to obtain a passport.  Compl. ¶¶ 13, 14; [ECF No. 1-4 at 1].  Plaintiff fell down two stairs in the atrium.  Compl. ¶ 15.  The stairs did not have handrails, and the atrium had no signs warning visitors about the danger of using the stairs.  Compl. ¶ 15.

---

¹ Although considering evidence outside the pleadings generally converts a rule 12(b)(6) motion to dismiss into one for summary judgment, certain narrow exceptions apply including for "documents the authenticity of which are not disputed by the parties . . . ." Ironshore Specialty Ins. Co. v. United States, 871 F.3d 131, 135 (1st Cir. 2017) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993)).

² The Court notes that if the photographs were included within the four corners of the Complaint, it would infer that they had not been modified.


*The site of Plaintiff's fall in the atrium of the Tip O'Neill Building. [ECF No. 15-1].*

As a result of the fall, Plaintiff's glasses broke, and she had some bruising including a bruised nose and knees, and a headache. [ECF No. 1-4 at 2–4]. The day after her fall, Plaintiff saw her primary care physician, who instructed her to return if needed and to seek urgent medical attention if her condition worsened. Id.

On September 8, 2014, Plaintiff felt soreness and numbness in her cheek and went to West Wing Hospital, where a nurse practitioner examined Plaintiff and a CT scan was performed. Id. The CT scan did not reveal any acute injuries and Plaintiff was discharged. Id.

On September 17, 2014, Plaintiff saw her dentist and complained of tooth pain that began with her fall. Id. Her dentist took x-rays and performed an examination, but found that her teeth did not appear to be injured. Id.

As a result of continued swelling of her left cheek, Plaintiff saw her primary care physician again on September 24 and October 7, 2014.  Id.  Her physician instructed her to take Advil and apply a cool wash cloth.  Id.

Plaintiff's medical expenses totaled $5,131.  Compl. ¶ 17.

The United States argues that this case should be dismissed because the GSA was not negligent as a matter of law, and because the Court lacks subject matter jurisdiction under the discretionary function exception to the FTCA.  [ECF No. 15].  Plaintiff contends that negligence is a question of fact and that the discretionary function exception should not apply because the case does not require the second-guessing of an administrative decision based on social, economic, or political policy.  [ECF No. 16 at 8].

## II. LAW

### a. Lack of Subject Matter Jurisdiction, Rule 12(b)(1)

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) at the pleading stage, granting such a motion "is appropriate only when the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003).  "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010).  "In addition, the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in this case." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).  While a court is limited in the extent to which it may consider evidence outside the pleading on a rule 12(b)(6) motion, attaching exhibits to a Rule 12(b)(1) motion does not convert it to a motion for

summary judgment.  Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002), as corrected (May 8, 2002).

### b. Failure to State a Claim, Rule 12(b)(6)

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must also accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Medical, Inc., 647 F.3d 377, 383 (1st Cir. 2011). Although detailed factual allegations are not required, a pleading must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action" is not enough. Id. To avoid dismissal, a complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citation omitted). Further, the facts alleged, when taken together, must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570).

The First Circuit has noted that "[t]he plausibility standard invites a two-step pavane." Id. "At the first step, the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). "At the second step, the court must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotations and citation omitted). "The make-or-break standard . . . is that the combined allegations, taken as true, must

5

state a plausible, not a merely conceivable, case for relief." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010). "Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal quotations and citations omitted).

  **c. Discretionary Function Exception to the FTCA**

"The United States as a sovereign can be haled into court only if it consents to be sued." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). "To expose the United States to suit, Congress must unequivocally waive sovereign immunity." Id. (punctuation omitted) (quoting United States v. Mitchell, 445 U.S. 535, 538 (1980)). The FTCA allows "civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). In allowing such claims, the Act "provides a carefully limited waiver of the federal government's sovereign immunity for certain claims alleging harm caused by United States employees or agents." Carroll v. United States, 661 F.3d 87, 93 (1st Cir. 2011). Absent the waiver of sovereign immunity provided by the FTCA, "the federal courts lack subject matter jurisdiction over torts against the United States." Wood v. United States, 290 F.3d 29, 35 (1st Cir. 2002).

Congress has specified several exceptions to the FTCA's waiver of sovereign immunity, including the discretionary function exemption. 28 U.S.C. § 2680. The discretionary function exception eliminates district courts' jurisdiction to hear FTCA claims "based upon the exercise

6

or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government[.]" 28 U.S.C. § 2680(a). With this exception, "Congress intended 'to protect the government from liability that would seriously handicap efficient government operations.'" Wood, 290 F.3d at 36 (quoting United States v. Muniz, 374 U.S. 150, 163 (1963)). Where the exception applies, courts lack subject matter jurisdiction and the Government retains its immunity "whether or not the discretion involved [was] abused." 28 U.S.C. § 2680(a).

A two-part analysis determines whether conduct falls within the discretionary function exception. Berkovitz v. United States, 486 U.S. 531, 536–37 (1988). First, courts "inquire whether the challenged actions were discretionary, or whether they were instead controlled by mandatory statutes or regulations." United States v. Gaubert, 499 U.S. 315, 328 (1991). Discretionary acts are those that "involve an element of judgment or choice." Berkovitz, 486 U.S. at 536. Because the government actor must have had a choice in how to act for the exception to apply, the discretionary function exception does not apply when "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." Id.; see also Gaubert, 499 U.S. at 322.

Upon a finding that applicable statutes, regulations, and policies left the government actor with discretion, the second step is to ask whether "the exercise of that discretion involves, or is at least susceptible to, policy-related judgements." Wood, 290 F.3d at 36. When a government actor is allowed to exercise discretion, "it [is] presumed that the agent's acts are grounded in policy when exercising that discretion," Gaubert, 499 U.S. at 324, and it is the Plaintiff's burden to explain why "the decision does not lend itself to a public policy analysis." Koussa v. United

7

States, 261 F. Supp. 2d 91 (D. R.I. 2003); see Shansky v. United States, 164 F.3d 688, 692 (1st Cir. 1999) ("Because the law presumes that the exercise of official discretion implicates policy judgments, [plaintiff] cannot prevail on this argument unless she demonstrates that the decision to forgo handrails and warning signs was not susceptible to policy analysis."). In order to "survive a motion to dismiss, [a complaint] must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Gaubert, 499 U.S. at 324–25.

Step two in the analysis does not look to whether government actors actually conducted a policy analysis in order to make a judgment about the conduct found to be discretionary in step one, but rather whether the conduct was of the type that would be "susceptible" to one. Id. ("The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."); Shansky, 164 F.3d at 692 ("The critical question is whether the acts or omissions that form the basis of the suit are susceptible to a policy-driven analysis, not whether they were the end product of a policy-driven analysis."). In Gaubert, the Supreme Court held that regulators' negligent involvement in the day-to-day operations of a savings and loan association fell within the discretionary function exception but explained, "If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply," because the discretion required by driving would not have been "grounded in regulatory policy." 499 U.S. at 325 n.7.

## II. DISCUSSION

The Court will first evaluate whether it has jurisdiction. If the discretionary function exception covers the government conduct at issue, the Court lacks subject matter jurisdiction to hear this case.

### A. Step One: Is the Conduct Discretionary?

The question of discretion boils down to whether applicable statutes or regulations left the GSA with a choice about how to act. For example, in Shansky, in the absence of a policy mandating that the Park Service defendants install handrails and warning signs on one of its exits, the First Circuit found the lack of such rails and signs to be a discretionary decision. 164 F.3d at 691. Similarly, in Fothergill v. United States, the First Circuit found that the United States Post Office's choice not to install a curb or other barrier that would have prevented a car from careening into the front entrance of a post office was discretionary because no rule "tied the Postal Service's hands in configuring and outfitting" its parking lot and post office. 566 F.3d 248, 253 (1st Cir. 2009).

As in Shansky and Fothergill, the absence of handrails or warning signs next to the steps in the Tip O'Neill Building appear to have been the result of discretionary decision-making. Plaintiff has not identified any statute, regulation, or policy that required the GSA to post warning signs or install handrails along the stairs at issue. The government asserts that the only applicable regulation at the time of the Tip O'Neill Building's construction in 1986 was the Public Buildings Act of 1959, 73 Stat. 479 (created by P.L.86-249, Sept. 9, 1959), and a controlling regulation, 41 C.F.R. § 101-19 *et seq.* (1976). [ECF No. 15 at 9]. The applicable portion of the 1976 controlling regulation states:

> In the design of new public buildings and alterations to public buildings, the objectives of nationally recognized building and performance codes, standards, and

specifications will be met and amplified according to the needs of GSA and as necessary to conform with the accident and fire prevention policy objectives stated in § 101-20.109-1. In addition, special features of local codes directly related to local circumstances or practices will be, to the maximum extent practical, incorporated into the design.

41 C.F.R. § 101-19.002(k). That regulation leaves ample room for discretion, and Plaintiff has not identified any codes, standards, or specifications that require that stairs in public buildings have warning signs and handrails. As no law or policy required the GSA to include handrails and warning signs, the GSA had the discretion to exclude those safety features. See Schuyler v. United States, 987 F. Supp. 835, 843 (S.D. Cal. 1997) (concluding that the GSA operated within its discretion when it chose the height of a guardrail and did not install fencing along a three-story high pedestrian ramp based on 41 C.F.R. § 101-19.002(k)).

### B. Step Two: Is the Discretionary Action Grounded in Policy?

As the regulations at the time of the Tip O'Neill Building's construction allowed the GSA to exercise discretion in designing the atrium and its stairs, "to survive [the] motion to dismiss, [Plaintiff] must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Gaubert, 499 U.S. at 324–25. This could be accomplished by showing that the discretionary function was "too far removed from a governmental entity's overall purpose so as not to implicate the exception." Koussa, 261 F. Supp. 2d at 96 n.5. In Koussa, for example, although the court found that the United States Postal Service's decision to construct speed bumps was discretionary, it concluded that the placement of speed bumps was insufficiently related to the policy objective of the Postal Service to "facilitate[ ] the delivery of the mail." 261 F. Supp. 2d at 94–95. Here, however, Plaintiff has failed to show that the design of the lobby was too far removed from the GSA's overall purpose.

10

Safety and design decisions, like the use of handrails and warning signs, are often found to be grounded in policy. For example, in Rosebush v. United States, the United States Forest Service's decision to design open fire pits without gratings or railings met the second prong of the discretionary function exception test because it involved "balancing the needs of the campground users, the effectiveness of various types of warnings, aesthetic concerns, financial considerations, and the impact on the environment . . . ." Rosebush, 119 F.3d 438, 443 – 44 (6th Cir. 1997). Similarly, in Shansky, the National Park Service's decision not to install handrails and warning signs at one of the exits to a park was grounded in policy because the decision "was the product of a broader judgment call that favored aesthetics over safety." Shansky, 164 F.3d at 693.[3]

Here, Plaintiff has not met her burden of showing that the absence of handrails and safety signs at issues does not lend itself to a public policy analysis. The government argues that "decisions about the best way to prevent people from falling down the platform stairs implicated a number of social and economic considerations, including, but not limited to, public safety

---

[3] See also Fothergill, 566 F.3d at 253 (holding that safety measures not included in design for post office parking lot "are informed by a need to balance concerns about a myriad of factors such as efficiency, safety, aesthetics, and cost. In other words, those choices are readily susceptible to policy analysis"); Brotman v. United States, 111 F. Supp. 2d 418, 426 (S.D.N.Y. 2000) ("The decisions involved in the design of the lighting—and in whether and where to post warning signs—in the Statue of Liberty pedestal involved the weighing of safety concerns as compared with aesthetic ones . . . ."); Chantal v. United States, 104 F.3d 207, 212 (8th Cir. 1997) (holding that National Park Service decision to install railing or other safety features to steps leading up to the Gateway Arch would involve weighing the "safety benefit of making changes" with the "aesthetic effect of such changes on the Memorial's overall design," making the decision the type "which Congress intended to shield from judicial second-guessing"); but see Gotha v. United States, 115 F.3d 176, 181 (3d Cir. 1997) (discretionary function exception did not apply to claim that U.S. Navy was negligent in failing to provide a stairway handrail because the handrail was a "mundane, administrative, garden-variety, housekeeping problem that [was] about as far removed from the policies applicable to the Navy's mission as it is possible to get").

. . . ." [ECF No. 15 at 16]. This argument is supported by the GSA's objectives during the construction of the Tip O'Neill Building, including that:

> The design of new buildings and their appurtenances should provide efficient and economical facilities in an architecture of distinction and quality. The architecture should reflect the dignity, enterprise, vigor, and stability of the United States Government. The designs shall embody the finest contemporary American architectural thought and shall respect local architectural characteristics.

41 C.F.R. § 101-19.002(g).[4] The regulation suggests that in designing the Tip O'Neill Building and its atrium, the GSA was exercising discretion in balancing safety, aesthetic features, functionality, cost, and other considerations. Plaintiff has not explained how that decision-making was not grounded in the policy of the regulatory regime, and has therefore not met her burden to show that the decision as to whether or not to install handrails or warning signs on the atrium steps where she fell was insusceptible to a policy analysis. Cf. Shansky 164 F.3d at 692 ("Shansky cannot prevail on this argument unless she demonstrates that the decision to forgo handrails and warning signs was not susceptible to policy analysis."); Chantal, 104 F.3d at 212 ("Generally, when governmental policy permits the exercise of discretion, it is presumed that the acts are grounded in policy. Chantal has offered no evidence rebutting this presumption.") (citations omitted). As such, the discretionary function exception to the Federal Tort Claims Act applies, and this Court lacks jurisdiction over Plaintiff's claim.[5]

---

[4] The present overall mission of the GSA is to "Deliver value and savings in real estate, acquisition, technology, and other mission-support services across government." GSA, Mission and Strategic Goals, https://www.gsa.gov/about-us/background-history/mission-and-strategic-goals.

[5] Plaintiff does not allege that the stairs were in a different condition on the day of her fall than they were designed to be or that the GSA had knowledge of some hidden risk. Cf. Chantal, 104 F.3d at 212 (affirming summary judgement where plaintiff did not "assert that he was injured as a result of negligently performed regular maintenance of the steps."); Verge v. United States Postal Serv., 965 F. Supp. 112, 118 (D. Mass. 1996) (holding that Postal Office could be liable for gravel on stairway as evidence suggested stairway was rarely swept by custodian). Further, even assuming *arguendo* that the discretionary function exception did not apply, Plaintiff's claim would fail because "a landowner's duty to protect lawful visitors against dangerous conditions

### III. CONCLUSION

Accordingly, Defendant's motion to dismiss [ECF No. 14] is <u>GRANTED</u> and the Complaint is dismissed. Plaintiff shall notify the Court within fourteen days if she intends to file an amended complaint.[6]

**SO ORDERED.**

December 13, 2018 /s/ Allison D. Burroughs

        ALLISON D. BURROUGHS
        U.S. DISTRICT JUDGE

---

on his property ordinarily does not extend to dangers that would be obvious to persons of average intelligence." O'Sullivan v. Shaw, 726 N.E.2d 951, 957 (Mass. 2000); see also Krivoy v. Sullivan, 865 N.E.2d 1209 (Mass. App. Ct. 2007) (holding the size of steps and their lack of a hand rail was an open and obvious danger).

[6] In the interest of judicial economy, the Court notes that Plaintiff's visual deception theory would be unlikely to change the analysis here.